UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JACQUELINE HAYES,                    )
                                     )
        Movant,                      )
                                     )
    vs.                              )          Case No. 4:09CV531 CDP
                                     )
UNITES STATES OF AMERICA,            )
                                     )
        Respondent.                  )

## MEMORANDUM AND ORDER

Movant Jacqueline Hayes seeks to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. Hayes was sentenced by the Honorable Stephen N. Limbaugh, Sr. to 48 months imprisonment following her guilty plea to one count of conspiracy to defraud a health care benefit program, six counts of failure to pay over employment taxes, and one count of fraudulent use of another's social security number. Criminal Case No. 4:05CR353. She did not file a direct appeal.

As grounds for her § 2255 motion, Hayes raises 60-plus claims of ineffective assistance of counsel at every stage in her criminal case. Hayes also asserts that the government committed prosecutorial misconduct in several ways. All of these allegations are conclusively refuted by the record, however, so I will deny the motion without a hearing.

## <u>Background</u>

The pretrial proceedings in Hayes' case were lengthy.  In June of 2005, Hayes and three other defendants were initially charged in a ten-count indictment which included one count of conspiracy to commit health care fraud against all the defendants.  Hayes was also charged with six counts of failure to pay over employment taxes and three counts of fraudulent use of another's social security number.  The indictment came as a result of several agencies' multi-year investigation into three health care companies – VIP Home Services, Complete Care of America and International, and Watkins Loving Care Home Services. These companies were owned and operated by Jacqueline Hayes and several of her family members and friends.  As part of their employment with these companies, Hayes and others provided in-home health care services to purportedly eligible elderly and disabled clients in the St. Louis area.  These services were reimbursed by Missouri Medicaid.  Investigations into the companies revealed, however, that the companies and their employees, including Hayes, were unlawfully reimbursed by Missouri Medicaid for services that were either not provided or were provided by unqualified persons.

On July 8, 2005, Hayes pleaded not guilty to the indictment, and, through counsel, filed a motion to suppress evidence and several statements she had made to investigators.  The Magistrate Judge recommended that the motion be denied in

part and granted in part, and Judge Limbaugh adopted that recommendation over Hayes' objections in November or 2005. The case was set for trial in February of 2006. In January of 2006, however, the grand jury returned a superseding indictment charging Hayes with additional counts. The superseding indictment also included several more defendants who had worked at the three companies, including Hayes' sister, Gwendolyn Silvers, and her daughter, Chante Hayes.

The superseding indictment charged Hayes with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347, 1035, 371, and 2 (Count 1); twelve counts of making a false statement related to health care matters in violation of 18 U.S.C. § 1035 (Counts 2-13); six counts of failure to pay over employment taxes in violation of 26 U.S.C. § 7202 (Counts 14-19); and three counts of fraudulent use of another's social security number in violation of 42 U.S.C. § 408 (Counts 20-22).

Hayes pleaded not guilty to the superseding indictment and filed several pretrial motions, including the same motion to suppress evidence and statements as she had filed directed to the original indictment. She also sought a Bill of Particulars "setting forth the specific acts of fraud which constituted the false representations to gain money from a health care program and materially false statements and representations in connection with the delivery and payment for health care benefits, other than those already delineated in the Indictment . . . ."

Finally, she moved to sever defendants or counts from the indictment. In a Report and Recommendation dated October 5, 2006, Judge Medler recommended denying all of Hayes' motions, which Judge Limbaugh adopted over Hayes' objections in November of 2006. The case was reset for trial on March 5, 2007.

In the fall of 2006, however, Hayes' counsel began to have concerns about Hayes' competence to stand trial after counsel discovered that Hayes had previously received Social Security benefits based on a diagnosis of Schizophrenia, paranoid type. Accordingly, counsel hired Dr. Donald T. Cross, Ph.D. to evaluate Hayes on November 8 and 10, 2006. After meeting with Hayes for several hours on these dates, Dr. Cross opined that Hayes had symptoms associated with Paranoid Schizophrenia, including a tendency to distort reality; that Hayes had a nonverbal learning disorder affecting her ability to read, write, and comprehend oral and written expression; and that Hayes was able to read at the fifth-grade level. Based on the results of this initial examination, counsel moved to file notice of expert evidence of a mental condition out of time, which Judge Limbaugh granted on November 20, 2006.

On that same date, the government filed a motion pursuant to Fed. R. Crim. P. 12.2(b) for an examination of Hayes by a psychologist or psychiatrist chosen by the government. Judge Limbaugh granted that motion the next date, and Hayes was evaluated by Dr. Gitry Heydebrand, Ph.D, on March 14, 2007. Dr.

Heydebrand determined that Hayes was not competent at that time to understand the charges against her and participate in her defense, because of prominent symptoms of auditory hallucinations, thought disorganization, and delusions. Dr. Heydebrand suggested that if Hayes responded to treatment, she might become psychiatrically stable for trial. Based on these opinions, Judge Limbaugh held a competency hearing on April 5, 2007, at which he determined that Hayes was not able to proceed with the trial. Pursuant to 18 U.S.C. § 4241, Hayes was committed to the custody of the Attorney General for hospitalization in a suitable facility in order to receive treatment such that Hayes might attain the capacity to permit the trial to proceed.

Hayes was treated at the Federal Medical Center at Carswell Texas for several months, including by James A. Shadduck, Ph.D. At Carswell, Hayes received training in courtroom procedures, attended group therapy, and was evaluated by medical staff. Although Hayes informed staff that she was depressed and/or experiencing hallucinations and had difficulties learning courtroom procedures – including the identity and functions of her lawyer – Hayes' behavior around Carswell indicated that she was able to function well. In particular, Hayes got along with others and was able to navigate herself around the large facility without difficulty. Moreover, tests revealed that Hayes was feigning her symptoms and/or malingering, and was otherwise not honest or forthright in her descriptions

of her limitations and abilities. Finally, Hayes' telephone conversations, which were recorded with her knowledge, revealed she was lucid at times and could give directions to her daughter about contacting counsel and paying bills. Hayes also had some bizarre conversations on the phone, however, including one in which she accused FBI agents of monitoring her through bees.

In August of 2007, after several months of treatment and evaluation, the Warden at Carsell sent Judge Limbaugh a report with a forensic evaluation and certificate of recovery for Hayes. Specifically, the letter stated,

> In accordance with your Order of April 6, 2007, and pursuant to the provisions of Title 18, United States Code, Section 4241(d), Ms. Hayes has been evaluated at the Federal Medical Center, Carswell. In the opinion of our clinical staff, Ms. Hayes has not been forthright in her presentation, nor has she been open to being educated about the Court process. Based on behavioral observation, we conclude that Ms. Hayes has been feigning severe mental illness, when convenient, for many years. In our professional opinion, Ms. Hayes is not suffering from a mental disease or defect which renders her unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.

Hayes was then released to return to St. Louis and was allowed to remain on bond, subject to living in a halfway house as directed by Pretrial Services. Dr. Cross evaluated Hayes again during the fall of 2007, and a competency hearing was set for November 13, 2007.

At the hearing, live testimony and exhibits were received. Dr. Shadduck testified for the government, while Dr. Cross and Dr. Hilary Klein, M.D., testified

for the defense.  Dr. Shadduck opined that Hayes was malingering to avoid prosecution, and that his extended period of examination of Hayes rendered him more qualified to give a better analysis.  Hayes' counsel cross-examined Dr. Shaddock extensively, including questioning him about his reliance on his staff's observations and about Hayes' admittedly bizarre behavior.

Dr. Klein treated Hayes at the emergency department at St. Louis University Hospital on October 22, 2007.  Hayes appeared agitated and confused and was having bad side-effects to an anti-psychotic medication, which Dr. Klein immediately changed.  Hayes also reported auditory hallucinations and presented a disorganized thought process; she did not know the function of a judge or jury, but indicated that her lawyer was helping her.  Dr. Klein concluded that, based on her observations, Hayes was not competent, but she also admitted that the fact a person has a mental illness does not automatically render her incompetent.  Finally, Dr. Cross testified that he had examined Hayes on at least five occasions between 2006 and 2007.  He concluded that Hayes had low verbal abilities and was schizophrenic and unable to assist in her defense or to understand what was happening.

After considering this testimony and other evidence, including Hayes' treatment records, background, and demeanor in the courtroom on the day of the hearing, Judge Limbaugh concluded in a Memorandum Opinion dated December 21, 2007 that Hayes was competent.  In particular, Judge Limbaugh concluded that

the preponderance of the evidence suggested that Hayes was either feigning her symptoms or malingering, or both, and was therefore competent to understand the nature of the proceedings brought against her, to proceed to trial, and to assist her counsel in her defense. In support of this conclusion, Judge Limbaugh relied on Dr. Shadduck's and his staff's four months of observation and testing of Hayes; Judge Limbaugh' own observations of Hayes' demeanor during the hearing, where she appeared calm, collected, and understanding of the hearing; the evidence suggesting Hayes had played a leading role in the underlying complicated conspiracy charged in the indictment; and the fact that Hayes' mental illness, even if true, would not in itself prevent her from being competent. Given this determination, the case was set for trial in January of 2008.

On January 9, 2008, however, Hayes and co-defendant Complete Care pleaded guilty before Judge Limbaugh. Hayes stated to Judge Limbaugh that she was satisfied with her counsel, and that counsel had explained her plea agreement to her "very well" and had answered all her questions. She also agreed that she had committed the acts for which she was pleading guilty.

In the written plea agreement, Hayes agreed to plead guilty to one count of conspiracy to commit health care fraud (Count 1), six counts of failure to pay over employment taxes (Counts 14-19), and one count of fraudulent use of another's social security number (Count 20). In exchange, the government agreed to move

to dismiss all remaining counts against Hayes in the superseding indictment, the original indictment, and an unrelated criminal matter before the Honorable Jean C. Hamilton.[1]  Hayes also agreed to waive her right to appeal all non-jurisdictional issues, including issues relating to pre-trial motions, hearings, and discovery, as well as any issues relating to the negotiation, taking, or acceptance of the guilty plea or the factual basis for the plea.  She also agreed not to file any § 2255 motions except for claims of prosecutorial misconduct or ineffective assistance of counsel.

As part of the factual basis for the plea, Hayes agreed that she and others had conspired from 1999 to 2005 to obtain Medicaid reimbursement for in-home services that were either not provided or were provided by unauthorized or unqualified persons.  Hayes also agreed that, as part of that conspiracy: (1) she created and permitted others to create documents that falsely indicated that care-givers had received training mandated by the state for their services to be eligible for reimbursement; (2) she had signed and submitted claims for payment that falsely indicated services had been provided when the services had not been provided or were provided by an unqualified person; and (3) she had created or permitted to be created false nursing reports with forged signatures that represented

---

[1]In 4:07CR406 JCH, Hayes was charged with one count of bankruptcy fraud and one count of wire fraud in connection with her alleged attempt to avoid bankruptcy foreclosure in the fall of 2006.  On April 1, 2008, the indictment was dismissed upon the government's motion after Hayes pleaded guilty in the criminal case before Judge Limbaugh.

that Joan Robinson, RN, had signed the reports, when Hayes knew Robinson had not signed the reports. Hayes also agreed that she willfully failed to account for and pay over to the Internal Revenue Service federal income taxes and Federal Insurance Contributions Act taxes for six quarters between September 30, 2001 and December 31, 2002. Finally, Hayes agreed that she had falsely represented that a number was the Social Security number assigned to her in order to open an account in the name of Complete Care at Lindell Bank in St. Louis.

With regard to Hayes' sentencing, the parties agreed that the base offense level was 6, and that the offense level should be increased by at least 10 points for losses in excess of $120,000. The parties disagreed, however, about any amounts above that number, with the government contending losses were in excess of $400,000, but Hayes denying any amount over $120,000. Hayes and the government agreed that there should be a two-level enhancement to Hayes' sentence pursuant to USSG § 3B1.3 for her abuse of a position of trust, as well as a four-level enhancement to her sentence pursuant to USSG § 3B1.1(a) because Hayes was an organizer/leader in a criminal activity that involved five or more participants. The parties recommended that two levels be reduced from Hayes' sentence because of her acceptance of responsibility. Accordingly, the government suggested an estimated Total Offense Level of 23, including the adjustment for losses in excess of $400,000, while Hayes suggested a Total Offense Level of 19.

In the same agreement, Hayes indicated that she was fully satisfied with her counsel's representation, and that she had reviewed and discussed with counsel the government's evidence and all possible defenses and defense witnesses. Hayes stated that counsel had completely and satisfactorily explored all areas Hayes requested relative to the government's case and any defenses. Lastly, she acknowledged entering the plea voluntarily and of her own free will because she was guilty of the crimes to which she pleaded guilty.

As stated above, at the guilty plea hearing on January 9, 2008, Judge Limbaugh reviewed the plea agreement with Hayes in detail, including discussing with her the factual basis for the plea, the waiver of her right to trial and to appeal, her satisfaction with her counsel, and the plea of the corporation. Hayes answered all questions appropriately and she asked on more than one occasion to discuss something with her counsel. Each time, she conferred with counsel and then resumed answering questions. At one point Judge Limbaugh indicated that Hayes would be released from the half-way house "on furlough" pending sentencing, and Hayes sought and received clarification that "furlough" did not mean she would necessarily have to return to the half-way house if she complied with her bond. Nothing in her answers in any way indicated that she did not understand the proceedings or that she was not competent. Her question about the "furlough" was an additional indication of her understanding and competence.

A presentence investigation report (PSR) was then prepared. The PSR determined that Hayes' total offense level was 23. Consistent with the government's earlier calculations, the PSR made this determination based on a base offense level of 6, with fourteen levels added because the losses totaled $550,000, four levels added because Hayes was an organizer/leader in a criminal activity involving five or more participants, two levels added because Hayes abused a position of trust, and three levels subtracted for Hayes' acceptance of responsibility. Hayes had no criminal history, so she had a criminal history category of I. With a total offense level of 23 and a criminal history category of I, the guidelines range for Hayes' sentence was imprisonment for 46 to 57 months. The PSR also determined that the Missouri Medicaid Program suffered a total loss of $550,000, and recommended that Hayes make restitution payments to Missouri Medicaid.

On March 27, 2008, Hayes appeared before Judge Limbaugh for sentencing. Hayes had objected to several items in the PSR, including the total loss amount, but Judge Limbaugh overruled those objections, determining after hearing testimony and considering evidence that the total offense level was 23 based on total losses of $545,713 to Missouri Medicaid and $73,071.10 to the IRS. Accordingly, Judge Limbaugh sentenced Hayes to 48 months imprisonment, which was near the lower end of the guidelines range, and ordered her to pay restitution in

the same amount as the total losses.  She was also sentenced to three years supervised release.  Hayes did not appeal.

On April 2, 2009, Hayes filed this timely § 2255 motion.[2]  Although Hayes raises several claims of ineffective assistance of counsel in the motion, she also filed several documents in which she argued that she did not wish to waive her attorney-client privilege, and that counsel should send her voluminous file to her in the Bureau of Prisons.  Because the "file" consisted of more than 30 boxes of documents, I denied her request to have her file sent to her in prison, but I appointed counsel to review the file and assist her with her motion.  I also ruled that Hayes, by filing her § 2255 motion, had waived her attorney-client privilege as to all matters related to her motion, and I ordered her trial counsel to provide information requested by the government for its response to Hayes' motion.  Together with an affidavit from Hayes' trial counsel, the government filed a reponse to Hayes' motion on August 14, 2009.  Hayes, through appointed counsel, filed a supplemental memorandum in support of her motion and in response to the government's opposition on October 7, 2009, to which the government responded on October 15, 2009.[3]

---

[2]Although the motion was received by the Court and filed on April 2, 2009, Hayes delivered it to her prison's mailing system on March 27, 2009, and the motion is therefore timely.

[3]On April 25, 2010, Hayes filed a pro se motion for new counsel.  However, rather seeking new counsel because of any failure of appointed counsel, this handwritten, 16-page

## Grounds Raised in § 2255 Motion

In her motion, Hayes raises 60-plus overlapping and related claims of ineffective assistance of counsel and prosecutorial misconduct. Most of her challenges center on the superseding indictment and counsel's alleged failure to assist in her defense, including with respect to Hayes' competency proceedings, her plea, and her sentencing. She also asserts that the government was part of a conspiracy to unlawfully convict her, and that counsel was ineffective for failing to stop this conspiracy. In her supplemental brief through appointed counsel, Hayes also challenges Judge Limbaugh's calculation of the amount of total loss and the resulting total offense level based on that loss calculation, contending counsel erred by failing to preserve this issue for appeal. She also claims the government committed prosecutorial misconduct during plea negotiations by representing that Hayes would plea to a smaller amount of loss, between $120,000 and $200,000, when the government later argued the total loss was greater than $400,000. Rather than listing each and every claim, I have followed the government's lead and discuss her claims below in general categories based upon the issues presented.

## Evidentiary Hearing

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on section 2255 motion unless the motion and the files

---

document largely raises many of the same conclusory and mostly incomprehensible claims of ineffective assistance of counsel that she raised in her initial § 2255 motion, so it will be denied.

and the records of the case conclusively show that [she] is entitled to no relief."

*Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal

quotation marks and citation omitted). "No hearing is required, however, where

the claim is inadequate on its face or if the record affirmatively refutes the factual

assertions upon which it is based." *Id.* (internal quotation marks and citation

omitted). Here, as discussed in more detail below, I find that Hayes' claims are

either inadequate or affirmatively refuted by the records and files before me, and I

conclude that no evidentiary hearing is required.

## Ineffective Assistance of Counsel

The Sixth Amendment establishes the right of the criminally accused to the

effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 686

(1984). To state a claim for ineffective assistance of counsel, Hayes must prove

two elements of the claim. First, she "must show that counsel's performance was

deficient. This requires showing that counsel made errors so serious that counsel

was not functioning as the counsel guaranteed the defendant by the Sixth

Amendment." *Id.* at 687. In considering whether this showing has been

accomplished, "judicial scrutiny of counsel's performance must be highly

deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of

hindsight" by examining counsel's performance from counsel's perspective at the

time of the alleged error. *Id.* Second, Hayes "must show that the deficient

performance prejudiced the defense." *Id.* at 687. This requires her to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of guilty pleas, a movant must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997). The court need not address both prongs if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

### A.     Failure to Move to Dismiss the Superseding Indictment

Hayes first claims her counsel was ineffective because she did not move to dismiss the superseding indictment for several reasons, including that it failed to state an offense, violated the protection of double jeopardy, was barred by the statute of limitations, and came as the result of the government's vindictive prosecution. I will consider each of Hayes' challenges to the indictment in turn.

### Sufficiency of the Indictment

Hayes first claims counsel should have moved to dismiss the superseding indictment because it was not a "concise and definite written statement of the essential facts." She also argues that the superseding indictment failed to list the dollar amounts billed to Medicare and Medicaid, and states that counsel should

have moved to dismiss the superseding indictment because, "It not conspiracy because it family member."

The record reveals that Hayes' counsel did not move to dismiss the indictment. But two of Hayes' co-defendants, Gwendolyn Silvers and Chante Hayes, did move to dismiss the indictment, and raised many of the same insufficiency arguments that Hayes raises now, including that the indictment failed to state an offense under Fed. R. Crim. P. 12(b)(3). Those claims were rejected by the court. Judge Medler recommended the motions be denied because she concluded that the superseding indictment "is a plain, concise, and definite statement of the essential facts constituting the offense(s) charged and complies in all respects with Rule 7 of the Federal Rules of Criminal Procedure," and "tracks the language of the statute(s) and places the defendant on notice of the nature and extent of the charges in order to protect her from double jeopardy." This recommendation was adopted by Judge Limbaugh and also was affirmed on appeal by the Eighth Circuit, which concluded that:

> Because the superseding indictment tracks the language of the conspiracy statute, identifies the federal criminal laws that are the subjects of the conspiracy, alleges each of the essential elements of conspiracy, states the nature of the fraudulent scheme that was the subject of the conspiracy, specifies the approximate time period during which the conspiracy took place, states the place from which the scheme was allegedly operated, and specifies overt acts that furthered the conspiracy, the superseding indictment is sufficient as it pertains to the conspiracy charge.

*United States v. Hayes*, 574 F.3d 460, 473 (8th Cir. 2009).  Because Hayes' co-defendants unsuccessfully raised the same challenges to the superseding indictment that Hayes now raises, Hayes' claim of ineffective assistance of counsel with respect to this issue fails.  Put simply, the superseding indictment stated a claim for the charge of conspiracy, and counsel was not ineffective for failing to move to dismiss it.

Hayes' other challenges to the sufficiency of the superseding indictment also fail.  It is unclear what exactly Hayes means by stating, "It not conspiracy because it family member."  If she is arguing that the law does not recognize a conspiracy among family members, that is incorrect.  *See, e.g., United States v. Askew*, 958 F.2d 806, 810 (8th Cir. 1992) (holding there was sufficient evidence of a conspiracy when government presented "substantial evidence that this drug ring was a family affair, in which family members had various roles but were aware of the common goal.").  If she is arguing that the indictment was insufficient because it failed to adequately allege a conspiracy and instead only alleged relationships among family members, that argument fails because the indictment did sufficiently allege a conspiracy, as discussed above.  And her claim that the indictment was insufficient for failing to include the specific dollar amounts billed to Medicare and Medicaid fails, because the government was not required to list those amounts in the indictment.  Instead, as discussed in the Eighth Circuit's *Hayes* opinion, the

indictment was sufficient because it contained all the essential elements of the crime of conspiracy – an agreement among two or more persons to commit health care fraud, the defendants' intent to enter into that agreement, and overt acts by one or more coconspirators in furtherance of the agreement. Nothing more is required, and Hayes' challenges to the sufficiency of the superseding indictment fail.

### Double Jeopardy

Hayes next claims counsel should have moved to dismiss the indictment because it violated the protections against double jeopardy. As with many of her other claims, it is unclear on what factual or legal basis Hayes relies in support of this argument. To the extent that she is claiming the original and superseding indictments violated double jeopardy protections, the record affirmatively refutes this claim, because the original indictment was dismissed by the government at the time of sentencing. If Hayes is referring to the fact that the Missouri Departments of Social Services and Health and Human Services were awarded a civil judgment against her company, Complete Care, in state court in 2005, this argument also fails, because that proceeding was civil in nature.[4] *Hudson v. United States*, 522

---

[4]It is unclear from the record whether this judgment was ever satisfied. In any event, it is undisputed that this action was civil in nature and was brought against Complete Care, not Hayes. Moreover, even assuming that Hayes was responsible for paying the judgment, a civil penalty can only create double jeopardy issues if a claimant presents clear evidence that the civil "statutory scheme was so punitive either in its purpose or effect as to transform what was clearly intended as a civil remedy into a criminal remedy." *United States v. Lipper*, 148 F.3d 974, 976 (8th Cir. 1998) (citing *Hudson*, 522 U.S. at 19); *see also Hudson*, 522 U.S. at 100 (holding that "only the clearest proof will suffice to override any legislative intent and transform what has been denominated a civil remedy into a criminal penalty."). Here, aside from her own

U.S. 93, 99 (1997) (the Fifth Amendment's double jeopardy clause only protects against the "imposition of multiple *criminal*, punishments for the same offense, and then only when such occurs in successive proceedings.") (emphasis in original) (internal quotation marks and citations omitted); *accord Students for Sensible Drug Policy Found. v. Spellings*, 523 F.3d 896, 899 (8th Cir. 2008). Accordingly, this civil proceeding did not implicate double jeopardy protections, and Hayes' counsel was not ineffective for failing to move to dismiss the indictment on this ground.

**Statute of Limitations**

Hayes also argues that counsel should have moved to dismiss the indictment because it violated the statute of limitations. The record affirmatively refutes this argument. In particular, the superseding indictment was filed on January 12, 2006 and first charged Hayes with conspiring to commit health care fraud in violation of 18 U.S.C. §§ 371 and 1035. The statute of limitations for a conspiracy crime is five years from the date of the last overt act alleged in the indictment. *See* 18 U.S.C. § 3282 (five-year limitations period for non-capital offenses); *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir. 1997). Because the superseding indictment alleged that the last act in furtherance of the conspiracy occurred on June 17, 2005, it was filed well within the five-year limitations period.

---

conclusory allegations, Hayes makes no such showing. Indeed, the rest of the evidence in the record reveals that the civil proceeding against Complete Care was not punitive in any respect; rather, it was a civil action by the state agencies that Hayes and her coconspirators defrauded in order to recover some of the funds lost in the conspiracy.

Next, Counts 2-11 and 13 alleged Hayes and others made false statements relating to health care matters in 2002, in violation of 18 U.S.C. § 1035, and Count 12 alleged a false statement on August 11, 2001. Because the statute of limitations for violations of 18 U.S.C. § 1035 is five years, Counts 2-13 were filed within the limitations period. *See* 18 U.S.C. § 3282. Counts 14-19 alleged that Hayes failed to pay over employment taxes for six quarters beginning on October 31, 2001, in violation of 26 U.S.C. § 7202. The statute of limitations for this section is also five years, so these counts were also filed within the limitations period. *See* 18 U.S.C. § 3282. Finally, Counts 20-22 charged Hayes with three counts of the use of the Social Security number of another person in October of 2001, June of 2002, and July of 2002 in violation of 42 U.S.C. § 408. The statute of limitations for this offense is six years, *see, e.g., United States v. Gollapudi*, 130 F.3d 66, 68-71 (3d Cir. 1997), so these Counts were also filed within the limitations period.

Accordingly, the record affirmatively refutes Hayes' claim that the superseding indictment violated the applicable statutes of limitations, and counsel was not ineffective for failing to move to dismiss the superseding indictment on this basis.

### Government Misconduct and Selective and Vindictive Prosecution

In further support of her claims, Hayes asserts that the government committed misconduct by conspiring to shut down Complete Care and destroy her,

prosecuting her selectively and vindictively, and providing false testimony and evidence to the Court and the grand jury. Hayes contends that counsel should have moved to dismiss on these grounds. However, aside from Hayes' own conclusory allegations, she offers no evidence in support of these claims. In considering § 2255 motions, I need not give weight to conclusory allegations, self-interested characterizations, or opprobrious ephitets. *See United States v. McGill*, 11 F.3d 223, 225 (11th Cir. 1993). Thus, I give no weight to Hayes' unsupported accusations of government conspiracy or misconduct.

Moreover, the rest of the evidence in the record refutes these allegations. In an affidavit submitted in support of the government's opposition to the motion, Hayes' counsel, Assistant Federal Public Defender Caterina DiTraglia, avers that, at Hayes' request, DiTraglia investigated the law and facts in support of a possible defense of selective and vindictive prosecution, but decided that this was not a viable defense because there was no evidence of a connection between the federal prosecutor and the state investigation. When Hayes suggested that she was the only person the government had ever prosecuted for failure to pay over employment taxes, counsel informed Hayes that she was incorrect and that counsel was aware of other cases in this district and within the Eighth Circuit in which the government had prosecuted defendants for the same offense. Counsel also avers that she reviewed and compared discovery from the government, from the attorney

who represented Hayes during the state civil proceedings, and from Hayes herself, and concluded that there were no inconsistencies or other evidence of fraud by the state agencies or federal prosecutor.  Given this evidence, and the lack of any other evidence supporting Hayes' conspiracy allegations, I must deny these claims.

### IRS Authorization and Bankruptcy Proceedings

Hayes next makes a series of related claims arising from her bankruptcy proceedings.  The record reveals that Hayes filed for bankruptcy in February of 2006, and that, as part of her resolution of those proceedings, Hayes was ordered to pay back taxes to the IRS.  Based on these facts, Hayes claims that counsel should have moved to dismiss the charges for failure to pay over employment taxes from the superseding indictment.  In particular, Hayes claims the government should have sought permission from the IRS before filing these charges in light of the bankruptcy proceedings, and that she should not have been prosecuted for failure to pay taxes in light of the bankruptcy proceedings.  This is incorrect.

To begin with, the record reveals that the IRS was involved in the investigation into Hayes and the three companies for several years and assisted the federal prosecutor in the criminal case against Hayes and her co-defendants.  In particular, IRS Special Agent Shannon Viernieuw investigated the tax allegations and amounts owed by Hayes.  After the IRS investigation was concluded, its evidence was given to the federal prosecutor, and Special Agent Vierneiuw

testified on the behalf of the government at the trial of co-defendants Gwendolyn

Silvers and Chante Hayes.  Moreover, as counsel informed Hayes in September of

2005 in a letter with case law attached, the government is permitted to prosecute

Hayes for failure to pay taxes even if she resolved her failure to pay taxes in her

bankruptcy proceedings.  *Cf. United States v. Carlson*, 498 F.3d 761, 762 (8th Cir.

2007) (before pleading guilty to one count of willfully failing to pay over trust

fund taxes in violation of 26 U.S.C. § 7202, defendant paid the IRS the full amount

of payroll taxes owed).  Accordingly, these claims are affirmatively refuted by the

record.

### Advice of Former Counsel

Hayes' next arguments for dismissing the indictment arise from the advice

she allegedly received from prior counsel.  More specifically, she contends her

counsel at the time of the state court proceedings, Stephen Nangle, informed her

how to fill out time sheets and do other activities in compliance with federal and

state Medicare law, and so she cannot be guilty of the crimes to which she pleaded

guilty, because she "did what attorney told her to do."[5] This is contradicted by

DiTraglia, however, who avers that she and other investigators interviewed

Nangle.  In his interviews, Nangle stated that he did not believe that Hayes'

---

[5]In her motion and related filings, Hayes also asserts that the indictment violated the "fair warning doctrine."  It is unclear what legal theory Hayes advances with this argument, but she has grouped it with her other claims that she relied on Nangle's advice, and so I have considered it in that context.

"reconstruction" of client time sheets was fraudulent if the time sheets had already been created but were destroyed or lost, but that he had never advised Hayes that it was appropriate to fabricate time sheets. Moreover, it is well settled that a criminal defendant "is not immunized from criminal prosecution merely because [she] consulted an attorney in connection with a particular transaction." *United States v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006). Instead, to rely upon the advice of counsel as a defense, a defendant must show that she: (1) fully disclosed all material facts to her attorney before seeking advice; and (2) actually relied on counsel's advice in the good faith belief that her conduct was legal. *Id.* at 897. Here, Hayes had made no such showing, and all the evidence in the record reveals that Nangle did not tell her to fabricate time sheets, fail to pay over employment taxes, use another's social security number, or perform any act that formed the basis of the crimes to which Hayes pleaded guilty.

Finally, Hayes claims, in conclusory fashion, that the indictment should be denied because it violated her "constitutional rights." Hayes does not explain which rights were violated or how, and so this claim must fail. *See Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001) (although courts should construe *pro se* §2255 motions liberally, a movant is entitled to no relief if the motion "lacks sufficient specificity under even the most liberal pleading standards.") (internal quotation marks and citation omitted).

Accordingly, all of Hayes' arguments for dismissing the indictment are meritless, and so counsel was not ineffective for failing to seek dismissal. These grounds for relief are therefore denied.

## B.     Failure to Investigate Defenses and Prepare for Trial

As her next grounds for relief, Hayes makes several related claims of counsel's alleged incompetence during the time before Hayes decided to plead guilty. In particular, Hayes alleges that counsel failed to investigate or challenge the government's case against her, to get exculpatory evidence from the government, and to contact or believe Hayes. Hayes also reasserts her claims that the government conspired against her, and contends counsel was ineffective for failing to stop this conspiracy by moving to suppress the government's allegedly fraudulent evidence. My review of the record and files before me reveals that all of these claims are affirmatively refuted.

### Failure to Investigate or Challenge the Government's Case

Hayes' general allegations that counsel failed to investigate the case or assist in her defense are addressed in large part in DiTraglia's affidavit. Describing her extensive investigation and preparation for trial, counsel avers:

> Counsel had at least thirty in-person conferences with Ms. Hayes at counsel's office, at Hayes' home, at the halfway house, at St. Charles County Jail and at the Couthouse over the three years her case was pending. Counsel had numerous phone conversations with her and sent her numerous letters. Counsel's investigator met with her

numerous times in addition to the conferences counsel had with her . . .

Counsel received over thirty boxes of discovery including voluminous electronic discovery from the government in this case. Counsel also received very disorganized but voluminous documents from Ms. Hayes at various times during the pendency of her case . . .

Counsel met with Ms. Hayes on numerous occasions for extended periods of time and reviewed information regarding each and every client of Complete Care of America and International, Inc. that counsel was aware of through Ms. Hayes' records and the discovery provided by the government. Some of the clients were deceased and could not be interviewed. Some of the clients could not be located. Counsel and Ms. Hayes agreed that some of the clients would not provide useful information to the defense either due to disability or dislike of Ms. Hayes or for some other reason. At least 30 clients were contacted and interviewed in anticipation of trial. Counsel was prepared to subpoena clients for trial of this case.

Counsel's investigator sent a request to the State of Missouri to locate some of the clients and employees of the State agencies that had been involved in the investigation of Ms. Hayes' company. At least one of them was interviewed. Counsel chose not to interview some government witnesses because it was determined, based on their numerous reports, that they did not have helpful information to the defense.

There were a number of "reports" regarding client and employee interviews and assessments contained in the discovery materials. Some of the authors of those reports worked for the Missouri State Division of Health and Senior Services. Some of the authors of those reports could not be located by the defense. Defense counsel had arranged with a representative and counsel of the agency to produce for trial six or seven of the report authors who were still employees of the agency if they were needed for trial. According to the state regulations, the Judge would have had to order the employees to speak to us and to testify (due to patient confidentiality issues). Counsel had arranged with legal counsel for the Missouri Division of Health and Senior Services, for the employees to appear (at which time the Court

could Order them to testify about the relevant reports) had Ms. Hayes decided to proceed to trial with this case.

Counsel's investigator interviewed numerous former employees of Ms. Hayes' company. Counsel's investigator traveled to Florida to interview a relative/former employee of Ms. Hayes.

Counsel's investigator located voluminous records from Ms. Hayes' previous civil litigation, bank accounts, corporations, accountant/tax preparer, Casino records, medical records, bankruptcy records, tax records, and school records. Some of the work records Ms. Hayes described during interviews were no longer available.

Counsel is unaware of any witness, record or physical evidence that was overlooked in the investigation and preparation of Ms. Hayes' case.

Additionally, the government has presented two memoranda from counsel's investigator, summarizing his notes from his research and interviews with clients and clients' family members about the type of treatment they received from Complete Care. Rather than supporting Hayes' claims, this evidence reveals that counsel and the investigator spent many hours going over evidence from Hayes and the government, preparing defenses, consulting with Hayes, and planning for trial.

And of course, Hayes' § 2255 claims that counsel failed to investigate or prepare for trial or consult with her are directly refuted by Hayes' statements in her plea agreement and before Judge Limbaugh at her plea colloquy. In her plea agreement, Hayes stated that she was "fully satisfied with the representation from defense counsel"; that she had reviewed the government's evidence and case, as

well as all possible defenses and witnesses with counsel; and that counsel had completely and satisfactorily explored all areas Hayes had requested. At her colloquy, Hayes testified similarly under oath. In the face of this overwhelming and undisputed evidence of counsel's thorough preparation and investigation of Hayes' case – including counsel's affidavit and Hayes' own sworn testimony – Hayes' claims must fail.

## Failure to Stop Government Investigation

Related to her claims that the government conspired to convict her, Hayes' next claim is that counsel was ineffective for failing to stop this conspiracy and, more specifically, the government's investigation into her after the grand jury returned the indictment. As discussed above, there is absolutely no evidence of any government conspiracy. Additionally, the record reveals that, contrary to Hayes' claims, counsel did make several attempts to limit the government's investigation of Hayes. Specifically, counsel moved in September of 2006 to quash post-indictment administrative subpoenas issued on August 24, 2006 pursuant to 18 U.S.C. § 3486 to banks that possessed Hayes' financial records. In her motion to quash, counsel argued that § 3486 did not authorize post-indictment subpoenas, that the records sought were irrelevant, and that the government's use of these subpoenas violated Hayes' due process and equal protection rights because she did not have access to similar process. Judge Medler denied Hayes' motion in

her Report and Recommendation, which Judge Limbaugh adopted over Hayes' objections in November of 2006. This evidence, together with the absence of evidence of any government conspiracy or use of fraudulent evidence, affirmatively refutes Hayes' claims that counsel was ineffective for failing to stop the government's investigation, and those claims fail.

As with her claims related to the superseding indictment, the record and files before me affirmatively refute Hayes' claims that counsel was ineffective at any time before Hayes decided to plead guilty. Accordingly, these claims fail to give rise to any relief.

### C.    Failure to Assist Hayes During Her Competency Determination

As her next grounds for relief, Hayes raises several claims of ineffective assistance of counsel during her competency determination. Hayes' first challenge is that counsel was ineffective because she "failed to file motion to receive independent treatment for incompetency for 120 days as gov't unfair." Hayes appears to refer to the fact that she was sent for treatment at the Federal Medical Center at Carswell, and to argue that counsel should have sought independent treatment for her instead. But any such motion would have been denied. After Judge Limbaugh determined Hayes was incompetent in April of 2007, Hayes was committed to the custody of the Attorney General for treatment in a suitable

facility, consistent with federal law.  *See* 18 U.S.C. § 4241(d).  In particular, § 4241(d) provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is . . . mentally incompetent . . . the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility –
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [she] will attain the capacity to permit the proceedings to go forward . . . .

Moreover, Hayes received treatment and was evaluated while in custody at Carswell.  Specifically, she met with a psychiatrist, attended group and one-on-one therapy, and learned about the court process in general.  Hayes may believe that the that treating professionals at Carswell were biased because they opined that she was malingering or fabricating her symptoms, but there is no evidence in the record to suggest this.  Rather, the evidence, including Dr. Shadduck's testimony, reveals that their opinion was based on their observations of Hayes, including her ability to function well in Carswell and her lucid conversations with her daughter. For all of these reasons, Hayes' claim that counsel was ineffective for failing to seek independent treatment for her must be denied.

Next, Hayes claims counsel failed to call expert witnesses to testify at her competency hearing.  This is simply untrue, as discussed in detail above.  Counsel

called two experts. Drs. Klein and Cross both testified in her defense at the hearing, and both concluded that Hayes was incompetent. Judge Limbaugh ultimately disagreed with them, but he noted that "Dr. Klein and Dr. Cross are very capable people," and that he did not "in this opinion fault their conclusions in any way other than to feel that the staff at the Federal Medical Center presents a more credible position." Additionally, Ronald Davis, an investigator with the Federal Public Defender's Office, testified in Hayes' defense that he had visited her home and observed it in a state of disarray. Moreover, defense counsel vigorously cross examined the government's witness, Dr. Shaddock, on the basis for his opinion that Hayes was competent. Because the record reveals that counsel not only presented several witnesses on Hayes' behalf, but also vigorously challenged the government's evidence, I cannot conclude that counsel was ineffective in any way at her hearing.

### D. Failure to Assist at Hayes' Plea

Hayes raises two claims for relief relative to her plea of guilty. First, she contends counsel was ineffective for allowing Hayes to plead guilty while on anti-psychotic medication. Second, she asserts counsel coerced her to plead guilty by

telling her she would receive a sentence of 26 years if she did not plead guilty.[6]

The record and files before me affirmatively refute these claims, however.

To begin with, the fact that Hayes was taking anti-psychotic medications at the time she pleaded guilty does not by itself render her incompetent to plead guilty. *See Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996). And excerpts from the transcript of the plea colloquy reveal that Hayes was competent and lucid at the time she plead guilty:

> THE COURT: Miss Hayes, I won't go into your mental health status because we're intimate with it so I simply will reiterate the finding that I made concerning your competency to go ahead with this type of proceeding that I entered on December 21st, 2007 and my ruling this morning with respect to the objections and I will determine and reaffirm today the findings that I made December the 21st, 2007. Between December the 21st and 2007 and today, that's a little over two weeks, anything drastically changed in your life that might affect your ability to understand what's going on?
>
> MS. HAYES: I don't know what you mean.
>
> THE COURT: Well, you've still been at MERS, haven't you?
>
> MS. HAYES: Yes, sir.
>
> THE COURT: And you've been taking your medicine?
>
> MS. HAYES: Yes.
>
> THE COURT: You've occassionally visited the doctor?

---

[6]Hayes also asserts counsel was ineffective for allowing her to enter a plea agreement that prevented her from testifying in her co-defendants' trial. This is simply untrue. Nothing in the parties' plea agreement discusses Hayes' ability or inability to testify in any matter, including co-defendants' trial.

MS. HAYES: Once a week.

THE COURT: I don't know whether you've seen the one at Barnes-Jewish or not.

MS. HAYES: I go once –

THE COURT: Not recently.

MS. HAYES: I go Friday. That's I see him, once a week.

THE COURT: Okay. You haven't had any accident or anything else that would affect your ability to understand what you're doing here?

MS. HAYES: Oh, no.

THE COURT: All right. Again, I reaffirm my initial findings.

In her affidavit, defense counsel DiTraglia avers that she believed Hayes was compliant with her medications at the time she pleaded guilty, and "was more lucid in her conversations regarding her case at the time of her plea and sentencing than she had been during other times during the pendency of her case." Accordingly, there is nothing in the record before me – aside from Hayes' own unsupported allegations – to indicate that Hayes was not competent to plead guilty.

The evidence in the record also refutes Hayes' allegation that counsel coerced her to plead guilty. Defense counsel's affidavit describes the events after Judge Limbaugh found Hayes competent and leading up to her plea:

> After the Court made its finding on December 21, 2007 that Ms. Hayes was competent, Ms. Hayes informed counsel and counsel's investigator that she would ". . . never have a trial." Counsel continued to prepare for trial despite Ms. Hayes' statement but at Ms.

Hayes' request, counsel asked the government about a plea agreement. On December 28, 2007 counsel sent the prosecutor a proposed stipulation via e-mail, outlining some general thoughts regarding a possible settlement of the case. Counsel proposed a calculation of the Guidelines that resulted in a range of punishment of between 27-33 months imprisonment. This e-mail was developed after a meeting with Ms. Hayes. Defense counsel's proposal was rejected by the government. Counsel returned to preparation for trial.

However, within a few days of the government's rejection of defense counsel's proposal, (sometime around January 2, 2008) Ms. Hayes again asked counsel about entering a plea of guilty and counsel did her best to negotiate the best outcome for Ms. Hayes that was possible at that time. Ms. Hayes wanted and counsel repeatedly asked the government to dismiss certain counts (tax counts and social security number related counts) in exchange for her plea of guilty. The government refused to do so and counsel advised Ms. Hayes that if she did not want to plead guilty under these circumstances, counsel was prepared to proceed to trial. At that time, **it is true that counsel informed Ms. Hayes that under the plea agreement the government would not agree to accept a plea without admission to certain counts.** On January 9, 2008, Ms. Hayes signed a Stipulation and entered a plea of guilty.

(emphasis in original). Rather than supporting Hayes' claim that counsel coerced her to plead guilty, this affidavit reveals that it was Hayes who wanted to plead guilty, even though counsel informed her that counsel was ready to go to trial if necessary. Additionally, counsel admits that she told Hayes that the government would not agree to dismiss certain counts, but instead was insisting that Hayes either go to trial or plead guilty to those counts, but this was not ineffective. To the contrary, it was an accurate statement of the facts: counsel accurately informed Hayes that the government refused to dismiss the tax and social security charges in

exchange for Hayes' plea to the other counts, and would only enter an agreement if Hayes pleaded guilty to those charges. This was not a coercive action by counsel, but instead, an accurate description of the possible plea, which Hayes accepted and agreed to voluntarily.

The voluntariness of Hayes' plea is further supported by her own statements at the plea colloquy:

> THE COURT: Knowing that you're giving up all of those rights, do you still tell me that you're guilty of the charges that I've gone over with you?
>
> MS. HAYES: Yes, sir.
>
> THE COURT: Miss Hayes, has anybody threatened you or intimidated you or coerced you or harassed you in any way at all to cause you to come in today and plead guilty?
>
> MS. HAYES: No, sir.
>
> THE COURT: The government has made certain promises to you. For example, they've agreed subject to the conditions that I've set out that you could go home and live with your daughter until the time of sentencing. other promises the government's made in this written agreement. I'd like to know, has Miss McMurtry or anyone else made any other promises? That is, other promises that are in the agreement, like talking with you and telling you this would happen or so forth that has caused you to come in today and plead guilty.
>
> MS. HAYES: No, sir.
>
> THE COURT: Are you doing this of your own free will?
>
> MS. HAYES: Yes, sir.
>
> THE COURT: On a voluntary basis?

MS. HAYES: Yes, sir.

THE COURT: Are you certain of that?

MS. HAYES: Yes, sir.

A § 2255 movant "must overcome strong presumptions . . . of the voluntariness of [her] guilty plea based on [her] representations at the plea hearing." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). This is because "[s]olemn declarations in open court carry a strong presumption of verity." *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990) (internal quotation marks and citation omitted). "To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent," *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999), which means it must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Here, Hayes' unsupported accusations aside, nothing in the record suggests that her plea was coerced. Rather, the evidence reveals that it was knowing and voluntary.

## E. Failure to Assist at Sentencing

As her next grounds for relief, Hayes raises several claims of ineffective assistance of counsel at sentencing, including that counsel failed to file a motion on disparity, failed to move to recuse Judge Limbaugh for his alleged bias, failed to

provide correct eligibility information about the Residential Drug Abuse Program, and failed to object to facts in the PSR.  The record refutes all of these claims.

**Sentencing Disparity**

Hayes first argues that counsel should have filed a motion claiming sentencing disparity, but, as the government points out, Hayes never explains how her sentence was unfair when compared to the sentences of her co-defendants or anyone else.  Indeed, the record reveals that her sentence was not the longest of her co-defendants, although the evidence revealed that Hayes played the largest role in the conspiracy.  Her sister, Gwendolyn Silvers, was not the leader of the conspiracy like Hayes, but was sentenced to 51 months imprisonment following her conviction by a jury to charges of health care conspiracy and making false statements related to health care.  Co-defendants Sharon Johnson and Earlean Hopson were not given prison sentences, but they also played smaller roles in the conspiracy and pleaded guilty much earlier in the proceedings.  There is no evidence of any unwarranted sentencing disparity in this case, and so counsel was not ineffective for failing to make this argument.

**Judicial Bias**

Hayes next asserts that counsel should have asked Judge Limbaugh to recuse himself, because he presided over the trial of her co-defendants and "heard perjury in co-defendant's trial."  It is true that Judge Limbaugh presided over the co-

defendants' trial and heard testimony and observed evidence that implicated Hayes as the ringleader of the conspiracy, but this is not a basis for his recusal. Instead, a judge need only recuse himself if the allegations of his bias or prejudice "stem from an extrajudicial source and result in an opinion on the merits on some other basis that what the judge learned from his participation in the case." *United States v. Thirion*, 813 F.2d 146, 155 (8th Cir. 1987) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (Harlan, J., dissenting)). Any knowledge that Judge Limbaugh gained of the case from observing trial or the guilty pleas and sentencing of Hayes' co-defendants was not a basis for him to recuse himself, and so any motion by counsel on this point would have been denied.

### Failure to Object to Facts in the PSR

Hayes contends counsel failed to assist her at sentencing and did not object to errors and damaging information in the PSR. This is simply untrue. The record reveals that counsel reviewed the PSR with Hayes and filed several objections to it on March 7, 2008, including objections to the total amount of loss suggested in the PSR. Judge Limbaugh considered these objections at a sentencing hearing, but ultimately rejected them after reviewing the government's evidence, including the testimony of investigators. Counsel presented defense witnesses and arguments and cross-examined the government's witnesses at the sentencing hearing.

Because the record reveals that counsel did the very things Hayes claims she failed to do, these claims must fail.

Hayes also makes the related claim that her due process rights were violated because she was sentenced based on "materially untrue assumptions or misinformation." Hayes has not provided anything that shows that any of the information in the PSR was incorrect. There is nothing to suggest that any of the government's evidence was false or fabricated, as discussed above. Counsel cross-examined witnesses and otherwise vigorously challenged the government's evidence at sentencing. Nothing more was required of her.

### Failure to Correctly Advise about the RDAP Program

Hayes' last claim related to her sentencing is that counsel was ineffective for providing her false and misleading information about the Bureau of Prison's Residential Drug Abuse Treatment Program. In particular, she claims counsel falsely informed her that she would be eligible for this program and thus would receive a reduced sentence, and that she would not have pleaded guilty if she had known she would not have qualified.

In her affidavit, counsel provides a detailed description of her discussions with Hayes about RDAP in the time leading up to Hayes' plea:

> Ms. Hayes alleges that counsel gave her incorrect information
> regarding her eligibility for participation in, and therefore a sentence
> reduction for completion for, the intensive drug treatment program in

the Bureau of Prisons (RDAP).  She seems to suggest that her decision to plead guilty was based on this information.  **This is true in part.**

Defense counsel did inform Ms. Hayes during plea discussions in December, 2007 and January, 2008 that counsel believed Ms. Hayes would be eligible for participation in the intensive drug treatment program in the Bureau of Prisons.  This was based on counsel's prior experience, Ms. Hayes' medical history which included references to drug addiction, Dr. Cross' recommendations and the Judge's recommendation.  In calculating the amount of institutional time Ms. Hayes would have to serve pursuant to the plea agreement, counsel factored a year off for completion of the RDAP program.  Counsel did advise Ms. Hayes that the ultimate decision regarding her acceptance into this program would be made by the Bureau of Prisons, but that counsel felt confident that she would be eligible.

After Ms. Hayes was sentenced, counsel sent numerous records and letters to various individuals in the Bureau of Prisons asking them to permit Ms. Hayes to participate in the RDAP program.  As far as counsel is aware, based on Ms. Hayes' statements, she has been rejected from participation in the program and therefore, will not be eligible for one year sentence reduction.  Counsel is not aware of why Ms. Hayes was rejected.

Based on counsel's conversations with Ms. Hayes prior to her plea of guilty, counsel does not believe that her ability to participate in the RDAP program was the *sole* reason why she decided to enter a plea of guilty in the case, although it likely was a factor in her decision.

(emphasis in original).

Of course, at the plea hearing Hayes told Judge Limbaugh that she had not

been promised anything other than what was in the agreement, and the claim that

she was promised eligibility contradicts that.  Even if counsel  informed Hayes that

her sentence could and probably would be reduced by one year if she participated

in RDAP, that does not entitle Hayes to § 2255 relief.  The RDAP is a program

operated by the BOP pursuant to 18 U.S.C. § 3621(b), which provides that the

BOP "shall make available appropriate substance abuse treatment for each prisoner

the Bureau determines has a treatable condition."  The decision  decision whether a

person should be placed in RDAP is soundly within the discretion of the BOP, and

counsel had no control over that decision – all of which counsel informed Hayes

before she pleaded guilty.  Even if counsel were incorrect in her estimations and

provided Hayes with incorrect advice, however, that would allow her to withdraw

her guilty plea at sentencing or now.  It is well settled in the Eighth Circuit that "a

defendant's reliance on an attorney's mistaken impression about the length of

sentence is insufficient to render a guilty plea involuntary as long as the court

informed the defendant of [her] maximum possible sentence."  *United States v.*

*Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009) (internal quotation marks and

citation omitted); *see also Roberson v. United States*, 901 F.3d 1475, 1478 (8th

Cir. 1990) (even if counsel failed to properly inform § 2255 movant about the

maximum sentence he faced, he was not entitled to withdraw his guilty plea

because the trial court informed him about the maximum).  Here, the parties' plea

agreement discussed the maximum possible sentence for each of the offenses to

which Hayes eventually pleaded guilty, and Judge Limbaugh went over those

sentences with her at her plea colloquy.  Accordingly, any mistake by counsel

relative to RDAP does not entitled Hayes to any relief now.

### F.     Other Claims of Ineffective Assistance of Counsel

Throughout her motion, Hayes makes several assorted and unrelated claims of ineffective assistance of counsel, including that counsel was inexperienced in health care law, was overworked, lacked sufficient funds to assist in Hayes' defense, and labored under a conflict of interest because she defended Hayes and Complete Care.[7]  None of these claims entitles her to relief.

### Counsel's Inexperience and Lack of Sufficient Time and Funds

Hayes claims counsel was too inexperienced in health care law to defend her, but Hayes does not specify what information counsel did not know or what legal errors counsel made.  By contrast, the record reveals that Hayes was represented by Assistant Federal Public Defender Caterina DiTraglia, who has many years of experience representing different defendants accused of a variety of federal crimes.  Hayes was also represented by David Harlan, who has worked for several years both in private practice – including business litigation and defense of white collar criminal cases – and as an Assistant United States Attorney.  Given counsels' experience and the undisputed evidence of counsels' diligent

---

[7]Hayes also claims that counsel failed to defend her when the government accused her of threatening witnesses.  However, Hayes does not specify when the government made these accusations, or what effect they had on her case.  Indeed, there is nothing in the record to suggest that they were ever made, either during her plea, before her sentencing, in the PSR, or at the sentencing hearing.

representation of Hayes, I cannot give any weight to Hayes' conclusory allegation that counsel was ineffective for failing to understand health care law.

Additionally, the record refutes Hayes' claims that counsel was overworked, did not have sufficient money for her defense, and failed to seek interim payments to assist with her defense pursuant to 18 U.S.C. § 3006.  Indeed, DiTraglia avers that she was never overloaded and that her case load was reduced on two occasions so that she could have sufficient time to work on Hayes' defense.  Counsel also avers that she "requested and received all funds necessary to prepare the case for trial," permitting her to hire a financial investigator, two different part-time contract assistants for document organization and review, and a second psychologist to assist in preparing for trial.  Finally, the record reveals that the Court appointed counsel David Harlan as co-counsel pursuant to 18 U.S.C. § 3006.

### Conflict of Interest

The record reveals that DiTraglia was appointed to represent Hayes as well as her company, Complete Care.  Hayes now asserts this dual representation was ineffective assistance of counsel.  I disagree.

The Sixth Amendment right to effective assistance of counsel includes the right to representation that is free from conflicts of interest or divided loyalties. *See, e.g., United States v. Acty*, 77 F.3d 1054, 1056 (8th Cir.1996).  Conflicts of interest might arise when an attorney simultaneously represents clients with

different interests, but joint representation of co-defendants by a single attorney is not a per se violation of a defendant's right to effective assistance of counsel. *Id.* "Instead, in order to establish a constitutional violation due to conflict of interest, a defendant who fails to make a timely objection to her counsel must demonstrate that 'an actual conflict of interest adversely affected [her] lawyer's performance.'" *Id.* at 1056-57 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). More particularly, to succeed on her conflict-of-interest claim, Hayes must show that counsel "actively represented conflicting interests." *Id.* at 1057 (quoting *Cuyler*, 446 U.S. at 350).

Here, Hayes' only support for her claim of conflict of interest is the fact that DiTraglia represented both Hayes and her company, Complete Care. But counsel's mere joint representation of these two defendants is insufficient as a matter of law to give rise to a claim of ineffective assistance of counsel. *See id.* at 1056. Hayes was the founder, sole shareholder, and owner of Complete Care, and it was part of the same health care fraud conspiracy that Hayes was part of. Since Hayes was the person who owned and operated Complete Care, any argument she would have tried to make that Complete Care was more culpable than she was would not have succeeded. Hayes has therefore failed to present any evidence of an actual conflict of interest, and this claim fails.

### G. Claims Raised in Hayes' Supplemental Memorandum

After counsel was appointed to assist Hayes with her § 2255 motion, counsel filed a supplemental memorandum in support of Hayes' motion after reviewing all of the reports, files, and other documents from her criminal case and meeting with Hayes and DiTraglia. In that memorandum, counsel raises additional claims of ineffective assistance of counsel and prosecutorial misconduct.

First, Hayes argues that her trial counsel was ineffective for failing to preserve for appeal Judge Limbaugh's determination of the amount of total losses to Medicaid attributable to Hayes. As discussed above, the parties' plea agreement stipulated that the total amount of loss was at least $120,000, with the government reserving the right to present evidence that the amount was greater than $400,000. At the sentencing hearing, the government presented evidence of that the total amount was $618,874.10, equal to $545,713 in losses to Medicaid plus $73,071.10 in losses to the IRS. Hayes' counsel presented evidence at the hearing as well, and cross-examined the government's witnesses about the amount. Over Hayes' objections, Judge Limbaugh agreed with the government and determined that the total loss amount was $618,874.10. Hayes does not argue now that there were any irregularities or failures of proof at that hearing, but instead contends that Judge Limbaugh erred in determining the total amount of loss, because the Eighth Circuit reversed another district court's loss determination in separate but related criminal

matter, *United States v. Sharon Otey*, Criminal Case No. 4:06CR26 CAS.  Hayes is mistaken.

The government's lack of proof and the Eighth Circuit's holding in *Otey* have no bearing on the government's proof in Hayes' case.  It is undisputed that Sharon Otey was employed by Hayes' company, Complete Care, as an RN, but it was later revealed that she was falsely claiming to be an RN.  Sharon Otey also worked for several other health care companies like Complete Care while falsely claiming to be an RN.  Otey was indicted for and eventually pleaded guilty to devising a health care fraud scheme in which she falsely represented herself as an RN to gain employment from health care companies, and to using the social security number of another.  She was not, however, charged with joining the same conspiracy as Hayes and Hayes' co-defendants, nor was she implicated in any of Hayes' tax fraud or misuse of a social security number charges.  Thus, the government's evidence in the *Otey* matter has no bearing on this case.

The amount of loss calculated at Hayes' sentencing was supported by the evidence.  Any challenge on direct appeal of this issue would have failed.  Indeed, it is undisputed that the government presented the same evidence of the total amount of loss to Medicaid in the same amount at Hayes' co-defendant Gwendolyn Slivers' sentencing hearing.  Silvers appealed Judge Limbaugh's loss amount determination:

Finally, Silvers asserts that the district court committed procedural error by incorrectly calculating her advisory Guidelines range . . . She argues that the court clearly erred by increasing her offense level by 14 levels based on its finding that the amount of loss attributable to her was $545,713 . . .

*Hayes*, 574 F.3d at 482.  The Eighth Circuit, considering the evidence of loss before Judge Limbaugh, rejected that claim, however:

At the sentencing hearing, the government's witness with regard to the amount of loss was Federal Bureau of Investigation Special Agent James Appelbaum, a specialist in the investigation of health care fraud for 15 years . . . Agent Appelbaum identified Exhibit 322, which he had compiled, as a summary of Missouri Medicaid payments to Complete Care and Watkins Loving Care from March 5, 1999 to July 22, 2005, broken down by client . . . According to Exhibit 322, the total paid by Missouri Medicaid to Complete Care and Watkins during this time period was $2,735,757.98 . . .

Agent Appelbaum then explained how the loss resulting from the health care fraud conspiracy of which Silvers was convicted was $545,731 . . . Agent Appelbaum explained that he: (1) "identified all the clients that had either received questionable services, had received no services, [or had received services from] aides [who] had not been trained properly and we identified about $1.7 million dollars," . . . (2) "refined that [amount] by going only to the clients where trial testimony was given either about that client or about individual time sheets [regarding that client] and we came up with a [new] total of . . . $977,665"; (3) "took 50 percent of that total, basically giving the defendants the benefits of the doubt that some services had been provided and came up with §488,825 [sic], paid by Missouri Medicaid for those clients" . . .; and (4) "added in $56,885.26 which was the amount of [the overpayment to Complete Care by Missouri Medicaid] and when we added to the $488,825, we got a total of $545,773 [a]s our estimated loss" . . . .

We conclude that the district court properly "calculate[d] a reasonable estimate of the loss based upon a preponderance of the evidence." *United States v. Boesen*, 541 F.3d 838, 850 (8th Cir. 2008); *see United*

> *States v. Piggie*, 303 F.3d 923, 927 (8th Cir. 2002) (providing that
> "[t]he amount of loss need not be determined with precision")
> (quotation omitted)).

*Id.* at 483-84. Thus, any appeal of Judge Limbaugh's total loss determination

would have failed, and counsel was not ineffective.

Hayes' last claim is that the government committed misconduct by

convincing her to agree to plead guilty based on false representations in an email.

Specifically, she references a printout of an January 2, 2008 email from the federal

prosecutor to DiTraglia, in which the federal prosecutor stated that he would not

object to a low-end sentence of 30 months. Hayes claims she detrimentally relied

on this promise to plead guilty. This claim is affirmatively refuted by trial counsel

DiTraglia's affidavit, which, as discussed in great detail above, describes the plea

negotiations and indicates that Hayes wanted to plead guilty and was well aware of

the consequences of doing so before her plea. The January email from the

prosecutor was part of the parties' ongoing plea agreement discussions, and is

binding on no one. Nor is there any evidence that Hayes detrimentally relied on

this email. Rather, the record reveals that DiTraglia informed Hayes that the

government would not agree to a plea unless she agreed to plead guilty to certain

charges, and Hayes still agreed to do so. The final written plea agreement

represented the parties' agreement, and it does not contain any promises not to

object to a 30-month sentence. There is no evidence of government misconduct, and the claims raised in Hayes' supplemental memorandum fail.

## Certificate of Appealability

Because Hayes has not substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appeal ability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Jacqueline Hayes' motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that Hayes' motion to appoint substitute counsel [#30] is denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of October, 2011.